UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICARDO PEREZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> JEFFERSON COUNTY; JEFFERSON COUNTY SHERIFF'S OFFICE; JEFFERSON COUNTY SHERIFF STEVE ANDERSON, in his official and individual capacity; DEPUTY JOHN WOLFE, in his official and individual capacities; CAPTAIN NORA ORTEGA, in her official and individual capacities; LIEUTENANT JOSHUA BUSH, in his official and individual capacities; CORPORAL DEREK BELNAP, in his official and individual capacities; DEPUTY JUSTIN CLEMENTS, in his official and individual capacities; and DOES 1-5, in their official and individual capacities, <br><br> Defendants. | Case No. 4:21-cv-00432-AKB <br><br> **MEMORANDUM DECISION AND ORDER RE MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Pending before the Court is the Motion for Summary Judgment of Defendants Jefferson County; Jefferson County Sheriff's Office; Jefferson County Sheriff, Steve Anderson; Deputy John Wolfe; Captain Nora Ortega; Lieutenant Joshua Bush; Corporal Derek Belnap; and Sergeant Justin Clements. (Dkt. 21). Under Idaho Local District Rule 7.1(d)(1)(B), the Court finds oral argument is not necessary to resolve this matter. *See also* Fed. R. Civ. P. 78(b) ("By rule or order,

the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed below, the Court grants Defendants' Motion for Summary Judgment.

## II. BACKGROUND

Plaintiff Ricardo Perez, Jr., was an inmate at the Jefferson County jail in Rigby, Idaho, from November 21 to December 7, 2019. (Dkt. 6 at ¶ 23). Shortly after Perez arrived at the jail, Greg Hunter—another inmate—warned Perez "some of the inmates were perpetrating sexual assault on other inmates." (*Id.* at ¶ 25). According to Perez's allegations, Hunter alerted Corporal Belnap and Sergeant Clements "to the sexual assaults" by submitting a report—referred to as a "kite"—on November 17, which was several days before Perez arrived at the jail.[1] Perez alleges this kite "warn[ed] that two inmates had perpetrated a sexual assault on an inmate." (*Id.* at ¶ 26). Perez alleges "no action was taken regarding [Hunter's] report." (*Id.*).

Thereafter, on or about November 29, "two inmates sexually assaulted [Perez], one of whom was [his] cellmate." (*Id.* at ¶ 27). Perez alleges "the two inmates involved in the assault were the same two inmates identified in [Hunter's] kite to jail authorities." (*Id.* at ¶ 28). As a result of this assault, Perez sustained injuries to his rectum and left testicle. (*Id.* at ¶ 30). Perez did not report the assault, however. (Dkt. 21-7 at Ex. A, p. 31, ll. 8-9).

Instead, on December 1, Perez's mother called the Jefferson County jail to report the assault. (*Id.* at Ex. F, p. 8, ll. 13-19). The deputy who received the call placed it on hold, went to Perez's housing unit with a corporal, and moved Perez for his safety. (*Id.* at Ex. C, p. 17, l. 18; *id.* at Ex. H, p. 1). On that same day, a detective was assigned to investigate the incident. (Dkt. 21-7

---

[1] Perez alleges Hunter submitted his kite on November 19, 2021. (Dkt. 6 at ¶ 26). The kite, however, is dated November 17. (Dkt. 21-7 at Ex. G).

at Ex. I). After speaking with an attorney, Perez eventually told the detective that Geovanny Reyes-Hernandez and Gabriel Lopez-Montiel had sexually assaulted him. (Dkt. 21-2 at ¶ 22). Perez received medical treatment and counseling services (Dkt. 27-7 at Ex. I, p. 8), and following the investigation, the investigating detective requested Reyes and Lopez be charged criminally. (*Id.* at Ex. I., p. 9).

Perez filed this lawsuit in November 2021 and subsequently amended his complaint, raising federal claims under 42 U.S.C §§ 1983 and 1988 and the Eighth Amendment. (Dkt. 6). Perez asserts these claims against the municipal entities, Jefferson County, and the Jefferson County's Sheriff's office; against the Jefferson County employees who allegedly had supervisory authority, including Sheriff Steve Anderson, Deputy John Wolfe, Captain Nora Ortega, and Lieutenant Joshua Bush; and against Corporal Derek Belnap and Sergeant Justin Clements, who were subordinate to the supervising Defendants. Additionally, Perez purportedly identifies "state pendent causes of action" by generally alleging Defendants' acts "constitute negligence; gross negligence; reckless, willful, and wanton conduct; deliberate indifference; and negligent and intentional infliction of emotional distress." (Dkt. 6 at ¶ 57). Defendants move for summary judgment on all of Perez's claims. (Dkt. 21).

### III. LEGAL STANDARD

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). "[W]here evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that issue is inappropriate for resolution on summary judgment." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quotation omitted). The

Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quotation omitted).  In considering a motion for summary judgment, the Court must "view[ ] the facts in the non-moving party's favor." *Id.*  "The court must not make any credibility determinations." *Id.*  To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in respondent's favor." *Id.* (citation omitted).

The Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" to preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV.  ANALYSIS

### A.  Nature of Claims

In Perez's complaint, he names the Jefferson County Sheriff's Office as a defendant. (Dkt. 6 at p. 1).  Perez makes no specific allegations against the Sheriff's Office, however, other than it employs individual Defendants.  (*Id.* at ¶¶ 5-9).  Additionally, Perez makes no arguments in support of a claim against the Sheriff's Office in response to Defendants' summary judgment motion.  Because a local government entity may not be held responsible for the acts of its employees under a respondeat superior theory of liability, any claim against the Sheriff's Office based on its employment of Defendants fails, and the Sheriff's Office is entitled to summary

judgment.[2] *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

Further, Perez concedes that he cannot assert claims against the individual Defendants in their "official" capacities and that these claims are subject to dismissal. (Dkt. 24 at p. 13). Perez also makes no arguments in opposition to Defendants' summary judgment motion for either the liability of Corporal Belnap or Deputy Wolfe, and he does not identify any genuine issues of material fact that they are liable. Indeed, Perez's summary judgment materials do not mention Deputy Wolfe. Regarding Corporal Belnap, Perez states only that "as for [Corporal] Belnap, a question of fact exists as to his involvement." (*Id.* at p. 16). That Corporal Belnap may have been involved in receiving Hunter's kite and communications related to it, however, is inadequate to establish a genuine issue of material fact that Corporal Belnap violated Perez's constitutional rights. Accordingly, summary judgment for Corporal Belnap, Deputy Wolfe, and all other Defendants in their official capacities is appropriate. *See* Fed. R. Civ. P. 56(e)(3) (providing court may grant summary judgment if motion and supporting materials show movant is entitled to it).

Based on these concessions, Perez's remaining claims for summary judgment are limited to three categories of claims, including: (1) whether Sergeant Clements was deliberately indifferent to a substantial risk of harm in violation of Perez's Eight Amendment right; (2) whether

---

[2] Indeed, Perez concedes he cannot allege facts showing a custom or policy sufficient to hold the Sheriff's Office liable under § 1983. (Dkt. 24 at p. 13). *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (noting a county employer "may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom").

**MEMORANDUM DECISION AND ORDER RE MOTION FOR SUMMARY JUDGMENT - 5**

those Defendants with supervisory authority—including Sheriff Anderson, Lieutenant Bush, and Captain Ortega—failed to train and supervise their subordinates adequately;[3] (3) whether Jefferson County is liable for failure to train under a "single-incident" theory of liability (verses a pattern of violations which Perez concedes he cannot show (Dkt. 24 at p. 13)); and whether Defendants are liable under state law.

### B. Sergeant Clements' Liability

A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement, including taking reasonable measures to guarantee inmates' safety. *Id.* at 832. A prison official violates the Eighth Amendment when two requirements are met. *Id.* at 834. First, the alleged deprivation must be objectively and sufficiently serious; i.e., a prison official's act or omission must deny the minimal civilized measure of life's necessities. *Id.* Second, a prison official must have a sufficiently culpable state of mind, i.e., one of deliberate indifference to the inmate's health and safety. *Id.*

Deliberate indifference is a subjective standard. *Id.* at 837. The official must both be aware of facts inferring a substantial risk of serious harm and draw that inference. *Id.* In other words, a prison official acts with deliberate indifference only if he is aware of an excessive risk to the inmate's health or safety and disregards that risk. *Id.* Further, deliberate indifference is a stringent

---

[3]   Neither Defendants nor Perez clearly distinguish between the two categories of subordinate and supervising Defendants. Because the theories of liability are different for each category, however, the Court distinguishes between them.

**MEMORANDUM DECISION AND ORDER RE MOTION FOR SUMMARY JUDGMENT - 6**

standard that requires proof a municipal actor disregarded a known or obvious consequence of his action.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Moreover, even prison officials who subjectively knew of a substantial risk to an inmate's health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Defendants contend they are entitled to summary judgment on Perez's Eighth Amendment claim because he cannot show they "were deliberately indifferent to a substantial risk of harm" to Perez.  (Dkt. 21-7 at p. 3).  Perez responds genuine questions of material fact exist regarding whether Defendants were aware of and disregarded a safety risk to inmates.  (Dkt. 24 at pp. 5-6).  Perez argues these factual questions turn on whether Defendants investigated and resolved Hunter's "allegations of inmate-on-inmate sexual conduct."  (*Id.* at p. 6).

Contrary to Perez's allegations, Hunter's kite does not identify the "same two inmates" who assaulted Perez.  (*See* Dkt. 6 at ¶ 28 (alleging Hunter's kite identifies the "same two inmates" who assaulted Perez)).  Indeed, Hunter does not identify any inmate or inmates involved in "sex playing."  Rather, Hunter's allegations—contained in his November 17 kite—generally state "one of the guys that live [sic] in the dorm I'm in is very disrespectful and always sex playing with others who do not want to play."  (Dkt. 21-7 at Ex. G).  The kite requests, "[c]ould you please move the [sic] inmates that are the problem or I guarantee there will be major problems with others on the tier."  (*Id.*).  In response to this kite, Hunter received a message that "Sgt. Clements and Cpl. Belnap have already talked to you about this and it will be resolved.  Deputy Whiting."  (*Id.*).

According to Sergeant Clements' deposition testimony, he investigated Hunter's kite but concluded it was unsubstantiated.  Specifically, Sergeant Clements testified:

**MEMORANDUM DECISION AND ORDER RE MOTION FOR SUMMARY JUDGMENT - 7**

> [W]e launched an—we call it an administrative investigation. When I talked to Mr. Hunter, he told me that one of the inmates in that dorm was being more or less sexually harassed by some of the other inmates.
>     . . . .
> During that investigation, we watched video footage of the pod, and we also talked to numerous inmates in the pod to find out what was going on.
>     . . . .
> End result, everyone we talked to said nothing was going on, there was nothing of a sexual nature. A lot of them just said they were just goofing off, but once again, nothing of a sexual nature. We were unable to find anything on the video footages of the dorm. And that—it was—it was closed out.

(Dkt. 21-7 at Ex. C, p. 63, ll. 3-25).

Perez disputes Sergeant Clements adequately investigated and resolved Hunter's kite. In support, Perez relies on Jefferson County jail's written policy adopted pursuant to the Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301, and contends Defendants failed to follow the policy. The PREA policy "mandates zero tolerance toward all forms of sexual abuse, sexual misconduct and sexual harassment." (Dkt. 24-6 at Ex. 5, p. 1). It provides that the staff member reporting "allegations and/or incidents of sexual abuse, harassment, misconduct, discrimination and/or retaliation" to the supervisor "shall . . . write an incident report" (*id.* at Ex. 5, p. 3); investigators shall "[i]nterview alleged victims, suspected perpetrators, and witnesses" (*id.* at Ex. 5, p. 5); and "[a]ll written reports, physical testimonial, and/or documentary evidence, credibility assessments, electronic monitoring data, DNA, and investigative facts and findings shall be thoroughly documented during the investigative process" (*id.*).

In support of Perez's summary judgment, Hunter filed an affidavit attesting that, contrary to Sergeant Clements' deposition testimony, "no staff members interviewed [him] about his kite." (Dkt. 24 at p. 6; *see also* Dkt. 24-13 at ¶ 16 (attesting he "was not pulled out or contacted by any jail staff about [his] concerns, or the result of any investigation")). Other than Hunter's statement that he was not interviewed about his kite, Perez relies on a "lack of evidence" showing Defendants

followed the PREA policy when investigating Hunter's kite and that "material questions of fact exist as to what [Defendants'] response was [because] [t]here is no physical record of the response." (Dkt. 24 at p. 7).

The absence of evidence, however, is insufficient to establish a genuine issue of material fact that Sergeant Clements was deliberately indifferent to Perez's health and safety. *See Farmer*, 511 U.S. at 837 (requiring showing of deliberate indifference to inmate's health and safety). Rather, Perez is required to set forth specific facts supported by evidence and with reasonable particularity to preclude summary judgment. *See Far Out Prods., Inc.*, 247 F.3d at 997 (stating summary judgment standard). Moreover, the Ninth Circuit has ruled that a prison official's violation of a prison policy does not establish § 1983 liability; rather, the focus is on whether the defendant violated the plaintiff's federal statutory or constitutional right. *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001); *see also Swearington v. California Dep't of Corr. & Rehab.*, 624 F. App'x 956, 958-59 (9th Cir. 2015) (ruling failure to follow prison policy is not violation of federal right); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy. [The plaintiff] must prove [the official] violated his constitutional right . . . .").

In this case, Perez has failed to show a genuine material factual issue that Sergeant Clements violated Perez's Eighth Amendment rights by being deliberately indifferent to a substantial risk of serious harm. *See Farmer*, 511 U.S. at 837 (stating deliberate indifference requires showing of awareness of excessive risk to prisoner's health or safety and disregard for that risk). Sergeant Clements investigated Hunter's kite and concluded it was unsubstantiated, and Perez offers no evidence to show Sergeant Clements was aware of a substantial risk to Perez but disregarded it. Accordingly, Sergeant Clements is entitled to summary judgment. The fact that

Hunter disputes Sergeant Clements interviewed him is insufficient to create a genuine issue of material fact, particularly in light of the Ninth Circuit authority that a prison official's violation of a prison policy does not establish § 1983 liability. *Case*, 249 F.3d at 929 (focusing on whether defendant violated plaintiff's federal statutory or constitutional right).

### C. Supervising Defendants' Liability

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them. *Id.* "An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018). A plaintiff may establish the requisite causal connection by showing that the supervisor set in motion a series of acts by others or knowingly refused to terminate a series of acts by others and that the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).

A showing that a supervisor acted or failed to act in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor. When a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction and not vicariously liable for his subordinates' culpable action or inaction. *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011) (holding that "a plaintiff may state a claim against a supervisor for

deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates").

In support of Perez's claim that the Defendants with supervisory authority are liable, Perez cites several emails dated between November 29 and December 9, which Perez refers to as "pass-downs" or "synopses of concluding 12-hour shifts." (Dkt. 24 at p. 15). These emails generally detail various daily activities occurring at the jail. (Dkt. 24-10). Sheriff Anderson, Captain Ortega, and Lieutenant Bush, among others, are copied on these emails. (*Id.*). None of the emails mention either Hunter or his November 17 kite.[4] Nevertheless, Perez argues that:

> Despite this apparent notification regarding Hunter's allegations, none of those in supervisory roles saw that the matter was pursued to its conclusion per policy. There are genuine issues of material fact whether the failure to supervise subordinates to ensure a follow up on Hunter's kite was the requisite causal connection that resulted in Perez's constitutional deprivation.

(Dkt. 24 at p. 15).

The evidence Perez cites—namely, the emails identified above—does not support Perez's suggestion the Defendants with supervisory authority over Sergeant Clements were aware of Hunter's kite and failed to properly supervise Sergeant Clements' investigation of the kite. As a result, the emails and other evidence in the record fail to establish a genuine issue of material fact as to a causal connection between any of the supervising Defendants' conduct and Perez's alleged

---

[4] Perez also notes a deponent, Robert Wells, testified that:

> Q: Would—well, let's—you indicated that you talked to Belnap and—and Clements then about this particular kite?
> A: I had Belnap's email, and I believe I just spoke with Clements.

Wells' role in the dispute and the significant of his testimony is unclear.

**MEMORANDUM DECISION AND ORDER RE MOTION FOR SUMMARY JUDGMENT - 11**

constitutional injury. Accordingly, Sheriff Anderson, Captain Ortega, and Lieutenant Bush are entitled to summary judgment.

### D. Qualified Immunity

Each individually named Defendant also contends summary judgment is proper because each individual is entitled to qualified immunity. (Dkt. 21-1 at p. 13). Local government officials are entitled to qualified immunity under section 1983 "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "If there is no constitutional violation, the inquiry ends and the [official] is entitled to qualified immunity." *Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018). If the alleged facts establish a constitutional violation, however, the Court "proceed[s] to part two of the test to determine whether the right at issue was clearly established." *Id.* Qualified immunity is "available only to government officials sued in their individual capacities." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 965 (9th Cir. 2010).

Perez argues it "is self-evident that the sexual assault of Perez is violative of his Eighth Amendment right to be free of cruel and unusual punishment." (Dkt. 24 at p. 15). That Perez was sexually assaulted, however, is not sufficient to show any individual Defendant violated one of Perez's constitutional rights. As discussed above, Perez has failed to show Defendants acted with deliberate indifference to a substantial risk of serious harm to Perez. *See Farmer*, 511 U.S. at 828. Accordingly, the individual Defendants did not violate a constitutional right and are entitled to qualified immunity.

### E. Jefferson County's Liability

The Supreme Court in *Monell*, 436 U.S. at 694, held that a local government entity may be liable under § 1983 when its policy or custom inflicts the injury but is not liable "for an injury inflicted solely by its employees or agents." In other words, a plaintiff must show "a direct causal link between a [government] policy or custom and the alleged constitutional deprivation" to hold a government entity liable under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). A government entity is not liable under § 1983 unless the plaintiff shows the entity's policy, practice, or custom was a moving force behind a constitutional violation. *Monell*, 436 U.S. at 694.

A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of showing a government entity's failure to train. *Connick*, 563 U.S. at 62. The Supreme Court's decision in *Canton*, however, "left open the possibility that, in a narrow range of circumstances, a pattern of similar violations may not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 63 (quotation omitted). In those rare instances, a government entity may be liable under "single-incident liability," *id.* at 64, if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need," *Canton*, 489 U.S. at 390. A failure to supervise, which is sufficiently inadequate, may also amount to a government entity's deliberate indifference. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

In this case, Perez alleges Jefferson County "engaged in an unofficial custom of ignoring sexual assaults" in the jail and had a "custom or policy" "to house inmates reported to have committed violent conduct with other inmates" or, alternatively, "had no policy or failed to follow any such policy to safeguard vulnerable inmates." (Dkt. 6 at ¶¶ 48, 53-54). In response to

summary judgment, Perez characterizes this claim as a failure to supervise or to train. (Dkt. 24 at pp. 8-15). Perez, however, "concedes he cannot allege facts showing a 'pattern of violations' to maintain § 1983 claims against Jefferson County and the Jefferson County Sheriff's Office for failure to train or supervise claims, and those claims against them are properly subject to dismissal." (*Id.* at p. 13). For this reason, the Court only analyzes Perez's claim against Jefferson County under the theory of "single-incident liability." *See Canton*, 489 U.S. at 390 (discussing theory).

### 1. Failure to Train

In opposition to Defendants' summary judgment motion, Perez curiously identifies evidence showing Jefferson County did train its employees on the PREA policy. For example, Perez notes: (1) Ortega's deposition testimony that Bush has "certain training every year," "went to a PREA training," and had online "Zoom" training; (2) Bush's deposition testimony that he had "hands-on" training for "a few hours with the former captain" and attended "a two-day class at ICRMP [Idaho Counties Risk Management Program]"; and (3) Jefferson County's production of documents identifying individuals who attended PREA training in 2018 and 2019. (Dkt. 24 at pp. 8-10). Further, Perez notes Anderson attested he "was in charge of overseeing the operations of the Jefferson County Sheriff's Office including the Jefferson County jail"; "[a]ll detention deputies received all required training and instruction pursuant to County policies"; and Ortega and Bush "were fully trained and certified to perform [their] roles" as PREA coordinators. (Dkt. 24 at p. 14 (quoting Dkt. 21-3 at ¶¶ 3, 5, 11)).

Despite outlining this evidence, Perez argues that "[t]here is a material dispute of fact that Anderson, in his supervisory position, acted to ensure Bush was properly trained, or acted to ensure Ortega saw to Bush's training" (Dkt. 24 at p. 14), and that "Bush's training to ensure compliance

with 'investigation of all alleged incidents' was deficient." (*Id.* at p. 10). In support, Perez claims Jefferson County did not produce any records of training its staff, including any "curricula, presentation, reading materials or other staff materials leading up to the date of [Perez's] assault" or showing Bush's training. (*Id.* at pp. 10, 14).

The only evidence identified in the record, however, is that Jefferson County did train its employees under the PREA program. That most of this evidence is not documentary is not a basis to reject it, as Perez suggests. Having failed to identify any supporting evidence—except Hunter's statement that he was not interviewed—Perez has failed to establish a genuine issue of material fact for trial whether Jefferson County's training under its PREA program was so obviously inadequate as to be deliberately indifferent. *See Canton*, 489 U.S. at 390 (ruling liability for inadequate training may arise if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"); *accord Benavidez*, 993 F.3d at 1154. Moreover, that a particular officer—in this case, Bush—may be unsatisfactorily trained is insufficient to fasten liability to Jefferson County as Bush's alleged shortcomings may have resulted from factors other than inadequate training. *See Canton*, 489 U.S. at 391; *see also Benavidez*, 993 F.3d at 1154 (noting a single incident may result in municipal liability where causation is "clearly traceable" to an authorized decisionmaker).

### 2. Failure to Supervise

Relying on *Canton*, Perez argues Sheriff Anderson did not adequately supervise Captain Ortega, who did not adequately supervise Lieutenant Bush, who "did not adequately supervise deputies—in this case, [Sergeant] Clements—to properly investigate Hunter's kite." (Dkt. 24 at pp. 11-12). Perez contends that "the absence of documentation of training or evidence of

compliance with policy indicates both failure to train and to supervise from the top level of administration down" and "ultimately led to the violation of [Perez's] Eighth Amendment rights." (*Id.* at p. 12).

Perez's conclusory arguments that everyone in the chain of command failed to supervise their subordinates and that there is an "absence" of evidence of training and supervision are insufficient to establish a genuine disputed material fact for trial. The Supreme Court held "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391; *accord Benavidez*, 993 F.3d at 1154. Perez, however, offers no evidence to show a failure to train Sergeant Clements under the PREA or to supervise him in investigating Hunter's kite resulted in a deprivation of Perez's constitutional rights. As the Supreme Court noted, that a particular officer may be unsatisfactorily trained does not give rise to liability because "the officer's shortcomings may have resulted from factors other than a faulty training program" or "an otherwise sound program has occasionally been negligently administered." *Canton*, 489 U.S. at 390-91. Thus, even assuming Jefferson County inadequately trained and supervised Sergeant Clements, Perez has not shown that alleged failure directly caused a deprivation of his constitutional rights, and Jefferson County is entitled to summary judgment.

E.  **State Law Claims**

Finally, Perez generally alleges state law tort claims for negligence; gross negligence; reckless, willful, and wanton conduct; deliberate indifference; and negligent and intentional infliction of emotional distress. (Dkt. 6 at ¶ 57). Under Idaho state law, a plaintiff seeking to recover on a tort claim against a governmental entity must survive three stages of analysis:

> First, the plaintiff must state a cause of action for which tort recovery would be allowed under the laws of Idaho, that is, "whether there is such a tort under Idaho law." Second, the plaintiff must show that "[no] exception to liability under the [Idaho Tort Claims Act] shields the alleged misconduct from liability." Third, if

no exception applies, the plaintiff still must meet its burden of showing that it is entitled to recovery based on the merits of its claim.

*Sherer v. Pocatello Sch. Dist. No. 25*, 143 P.3d 1232, 1236 (Idaho 2006) (internal citations omitted). In resolving a summary judgment motion, a court must first determine whether the plaintiff has stated a valid tort under Idaho law and whether the ITCA provides immunity before reaching the merits of the claim. *Id.*

In this case, Defendants argue they are entitled to immunity on Perez's state law claims under Idaho Code § 6-904A(2), which provides exceptions to government liability. (Dkt. 21-1 at p. 19). In response, Perez contends genuine issues of material fact remain as to whether Defendants' "failure to investigate constitutes gross negligence under Idaho law." (Dkt. 24 at p. 17). Nevertheless, Defendants contend they are entitled to immunity because Perez has failed "to demonstrate any malice or criminal intent by any Defendant." (Dkt. 21-1 at p. 19).

Idaho Code § 6-904A(2), upon which Defendants rely, requires a plaintiff to show malice or criminal intent to avoid governmental immunity. It provides:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent and without reckless, willful and wanton conduct as defined in section 6-904C, Idaho Code, shall not be liable for any claim which:
> . . . .
> 2. Arises out of injury to a person or property by a person under supervision, custody or care of a governmental entity or by or to a person who is on probation, or parole, or who is being supervised as part of a court imposed drug court program, or any work-release program, or by or to a person receiving services from a mental health center, hospital or similar facility.

*Id.*; *see also Brooks v. Logan*, 944 P.2d 709, 710 (Idaho 1997) (applying I.C. § 6-904A(2) immunity to claim of negligent infliction of emotional distress against school).

Perez contends that Defendants failed to act, as required by policy, and that such failure "was deliberately indifferent to the harmful consequences to others." (Dkt. 24 at p. 17). In support,

**MEMORANDUM DECISION AND ORDER RE MOTION FOR SUMMARY JUDGMENT - 17**

Perez relies on the definition of "gross negligence" provided in I.C. § 6-904C(1). Notably, however, I.C. § 6-904A providing for governmental immunity does not reference gross negligence. Rather, it requires a showing of "reckless, willful and wanton conduct" to overcome governmental immunity. Further, I.C. § 6-903(5) provides a rebuttable presumption that a government employee's conduct is "without malice or intent."

Perez has not argued or presented a factual dispute regarding whether Defendants acted with malice or criminal intent or with reckless, willful and wanton conduct. Accordingly, no genuine dispute exists as to the state law tort claims, and Defendants are entitled to summary judgment.

## V. ORDER

**IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 21) is **GRANTED**; and

2. Plaintiff's Motion for Leave to File Amended Pleading for Punitive Damages (Dkts. 22, 23) is **MOOT**.

DATED: August 11, 2023

Amanda K. Brailsford
U.S. District Court Judge